UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

ODEGARD INC.,

        Plaintiff,

- against -

SAFAVIEH CARPETS, INC. and
SAFAVIEH, INC.,

        Defendants.

------------------------------------------X

04 Civ. 4142 (RWS)

O P I N I O N

A P P E A R A N C E S:

    ARTHUR R. LEHMAN, LLC
    Attorneys for Plaintiff
    52 Vanderbilt Avenue
    New York, NY 10017
    By:  ARTHUR R. LEHMAN, ESQ.
        Of Counsel

    OSTROLENK, FABER, GERB & SOFFEN
    Attorneys for Defendants
    1180 Avenue of the Americas
    New York, NY 10036
    By:  ROBERT C. FABER, ESQ.
        PETER S. SLOANE, ESQ.
        CHARLES P. GUARINO, ESQ.
        Of Counsel

11-9-05

Sweet, D.J.,

Defendants Safavieh Carpets, Inc. and Safavieh, Inc. ("Safavieh") have moved pursuant to Rule 56, Fed. R. Civ. P., for summary judgment to dismiss the claim of copyright infringement contained in the complaint of plaintiff Odegard Inc. ("Odegard"). For the reasons set forth below, the motion is granted.

**Prior Proceedings**

On June 2, 2004, Odegard filed its complaint alleging causes of action for copyright infringement, unfair competition, conversion and unjust enrichment arising out of the alleged substantial similarity between the Mahogany carpet in Safavieh's Rodeo Drive collection and the Takyu III design in Odegard's Kyoto collection. An answer containing affirmative defenses and counterclaims was filed and Odegard filed its reply. Discovery was had and the instant motion was marked fully submitted on July 13, 2005.

**The Facts**

The facts are set forth in the parties' Local Rule 56.1 Statements. For the purposes of this motion, Safavieh does not challenge Odegard's assertion that Safavieh had access to Odegard's Takyu III design.

Odegard designs, manufactures, and sells Tibetan carpets. Among its various lines of carpets, Odegard sells a design called "Takyu III."

Stephanie Odegard is the president of Odegard who created the Takyu III design in the middle to late 1990's, elements of which were inspired by and derived from an antique Japanese kimono depicting vines. Odegard sells the Takyu III carpet as part of its "Kyoto Collection."

Takyu III is a hand-drawn design. The work "takyu" means vine in the Tibetan language, perhaps a particular vine. The spindly vines in Takyu III turn and curl in every direction. In Takyu III some of the vines spill from the broken border into the large open field at the center of the design. Most of the vines in Takyu III have stems and leaves and curlicues. Some of the vines in Takyu III have multiple leaves on the vine stems and have a floralesque aspect. Most of the vines in Takyu III are curvilinear, constituting a curvy design rather than a geometric, straight-edge design. The blocks of color in the border of the Takyu III design are separated by straight edges between them except that the handmade process sometimes alters the straight appearance. Each edge between the colored blocks in the border of Takyu III consists of a narrow scissored line.

Borders are common elements in carpet design while broken borders are not. Branches of plants are common elements in carpet design. The combination of patterned borders (but not broken borders) and floral motifs were commonly used in carpets before the middle to late 1990's.

Odegard carpets are known for their "contemporary classic" design.

U.S. Copyright Registration No. VA-1-035-311 for the Takyu III fabric design identified the textile design created by Odegard known as "Takyu" as a preexisting work on which Odegard holds a copyright registration and identified the material added to the work as motifs selected from "Takyu" and made into a new design layout. The fabric design known as "Takyu III" was created by Stephanie Odegard.

In addition, the unrebutted affidavit of Stephanie Odegard, president of Odegard, describes her background, including service in the Peace Corp., familiarity with Tibetan products, and the development and establishment of Odegard and its success in the design world. Odegard is preeminent in the importation of hand-knotted woolen carpets, its sales exceed $10 million and its sales of 350 Takyu III rugs have produced $1.6 million in revenues. Odegard has spent $300,000 between 2000 and 2004 advertising the

3

Takyu III rug. Stephanie Odegard described in detail the process by which she created the Takyu III design.

Safavieh sells carpets in the United States and among its many designs Safavieh sells a collection called the "Rodeo Drive Collection" which includes a carpet design named "Mahogany." Sales of the Mahogany design totalled $5,196.20 and have been discontinued.

Albert Laboda ("Laboda"), the employee of Safavieh who created the Mahogany design of Safavieh used a computer to create the Mahogany design. Laboda, who was employed for about a year, is no longer an employee of Safavieh and is a missing witness.

Odegard advertised its Takyu III design from 2000 to 2004 in prominent design magazines, many of which are regularly read by Safavieh employees.

## Summary Judgment Is Appropriate

Summary judgment may be granted when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Non-infringement may be determined as a matter of law. <u>Walker v. Time Life Films, Inc.</u>, 784 F.2d 44, 48 (2d Cir. 1986), citing <u>Warner Bros. v. American Broadcasting Co.</u>, 720 F.2d 231, 240 (2d Cir. 1983), <u>cert.</u> <u>denied</u>, 476 U.S. 1159 (1986).

Courts in the Second Circuit have granted motions for summary judgment on non-infringement in copyright cases. <u>See</u>, e.g., <u>Williams v. Crichton</u>, 84 F.3d 581 (2d Cir. 1996); <u>Churchill Livingstone, Inc. v. Williams & Wilkins</u>, 949 F. Supp. 1045 (S.D.N.Y. 1996). The Second Circuit has held that where both the plaintiff's and defendant's works are before the court, "the court may compare the two works and render a judgment for the defendant on the ground that as a matter of law a trier of fact would not be permitted to find substantial similarity." <u>Durham Indus., Inc. v. Tomy Corp.</u>, 630 F.2d 905, 918 (2d Cir. 1980).

To establish copyright infringement, Odegard must prove: (1) ownership of a valid copyright, and (2) infringing copying of constituent elements of the works that are original. <u>Eve of Milady v. Impression Bridal, Inc.</u>, 957 F. Supp. 484, 487 (S.D.N.Y. 1997), citing <u>Laureyssens v. Idea Group, Inc.</u>, 964 F.2d 131, 139 (2d Cir. 1992); <u>Williams v. Crichton</u>, 84 F.3d 581, 587 (2d Cir. 1996), citing <u>Feist Publications, Inc. v. Rural Tel. Servs., Inc.</u>, 499 U.S. 340, 361 (1991). For the purposes of this motion, Safavieh has assumed, without admitting, that Odegard owns a valid copyright

in the Takyu III design and that it had access to the Takyu III design.

**The Differences Between The Designs**

The hand-drawn Takyu III design is characterized by its meandering vines which run and curl in every direction. The vines have clearly defined leaf shapes, joined to the vines at one end of the leaf, as occurs in nature. The computer-generated Mahogany design has no vines or curls but relatively long and straight lines, interspersed with uniformly shaped oval figures, displayed in a diagonal arrangement. Some lines pierce and run through the oval figures. Other lines are broken up by, and connect, the oval figures.

The Takyu III design has leaves on certain vines. All the leaves are leaf-shaped, not ovals. The leaves are also sized differently. Some vine branches have very small leaves, almost like spines along the vines. The Mahogany design has oval shapes of uniform size only, some intersected by lines, and no leaf shapes at all.

The lines and only oval shapes in Mahogany create a design of contrasting geometric shapes with lines and ovals in place of the vines in Takyu III which are curvy in appearance and "floralesque."

6

The floral appearance of the Takyu III design results in part from the random extensions of the vines into the large field at the middle of the design. The vines in Takyu III are of irregular length and, as a result, are not confineable to a narrow border region. The Mahogany design does not have anything displayed in the field in the middle. The shapes and lines in the border end where the border meets the field.

The broken borders, too, are different between the two designs. The colored blocks in Takyu III abut each other, adjacent blocks demarcated only by narrow-width parallel lines. The colored blocks in the Mahogany design are separated by thick, jagged lines which are not even uniform in thickness.

Some of the colored segments in the border of the Mahogany design are not fully separated. Some segments have dividing lines that start at the edge of the carpet, stop in the middle of the border, and start again before reaching the middle field.

Takyu III has 14 distinct colored blocks in its border. Mahogany appears to have 19 blocks, unevenly arranged.

The Takyu III design shown in the deposit material to the copyright application includes a colored border block displayed with the same light blue color pictured in the field in the middle

of the design, creating the appearance of an asymmetric design. The border design in the Mahogany carpet, on the other hand, appears symmetrical. The color in the field is offset by the non-matching color shown in each and every block in the surrounding border.

The combination of colors shown in the deposit material also differs entirely from any combination of colors used by Safavieh for its Mahogany design. The combination of light blue, dark blue, olive, ivory and orange displayed in the deposit material are missing from any of the accused designs.

## The "More Discerning Observer" Test Is Applicable

It is a reasonable inference under the circumstances here that Laboda used the Takyu III design in creating his computer design. He is no longer employed, there are no records of his design work, and those to whom he submitted his design did not observe him as he created his design. Because of Odegard's prominence and advertising, access is presumed for the purpose of this motion. However, that inference does not end the inquiry.

Illegal copying is proved by showing substantial similarity, not between the works as a whole, but only as between the protectable elements of the copyrighted work and the accused infringing work. See Folio Impressions Inc., v. Byer California,

937 F.2d 759, 765-66 (2d Cir. 1991); Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), 71 F.3d 996, 1002 (2d Cir. 1995).

The protectable elements in the Takyu III design must not include any elements in the public domain such as the vines, including the leaves, stems and curlicues, derived from the "Takyu" Japanese kimono which was identified as preexisting material in the Certificate of Registration for the Takyu III design.

Certain elements of the Takyu III design, such as borders and branches, are common elements in carpet design and the combination of patterned borders and floral motifs were commonly used in carpets before the middle to late 1990's.

Therefore, the only protectable aspect of the Takyu III design is the selection and arrangement of the otherwise unprotectable elements. Indeed, the Certificate of Registration for Takyu III indicates that the material added to the preexisting work are motifs selected from "Takyu" that have been made into a new design layout. That new layout consists of vines meandering around the broken border and straying into the large open field.

Odegard's selection and arrangement of the meandering vines and broken border into a new layout is entitled to only a narrow scope of protection. In Feist Publications, Inc. v. Rural Tel. Servs., Inc., 499 U.S. 340 (1991), the Supreme Court held that

9

copyright protection in the selection, coordination and arrangement of otherwise uncopyrightable elements is "thin" because the scope of the copyright is limited to the particular selection or arrangement. Id. at 349-51. Furthermore, a "subsequent [author] remains free to use [the public domain elements] to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement." Id.

The difficulty of the application of the "ordinary observer" standard and the "more discerning" ordinary observer standard is exemplified by the Court of Appeals discussion of the standards in Hamil America, Inc. v. GFI, 193 F.3d 92 (2d Cir. 1999). In that case the court stated:

> Here, there is no contention that either party imported unprotectable material from the public domain into its floral fabric design. We therefore need not apply the "more discerning" ordinary observer standard.

Id. at 102.

In discussing the "more discerning" standard considered in Folio Impressions, the court stated:

> Having narrowed the scope of the copyright, we applied a "more discerning" ordinary observer test and compared only the protected portion of the design -- that is, the roses and the way they were arranged, rather than their display against the background -- to the allegedly infringing fabric design. Folio Impressions, 937 F.2d at 765-66; see also Knitwaves, 71 F.3d at 1003.

10

<u>Id.</u> at 101.

Based on these authorities the "more discerning ordinary observer" test is applicable in determining substantial similarity.

**The Designs Are Not Substantially Similar**

Odegard does not dispute that its copyright is limited to its original contributions in selecting, modifying, coordinating, coloring and arranging the public domain elements found in its work. As such, the copyright in Takyu III is "thin" because its scope is limited to the particular selection or arrangement. <u>Feist Publications, Inc. v. Rural Tel. Servs., Inc.</u>, 499 U.S. 340, 349-51. <u>See</u> <u>also</u> <u>Beaudin v. Ben & Jerry's Homemade, Inc.</u>, 95 F.3d 1, 2 (2d Cir. 1996) ("Where the quantum of originality is slight and the resulting copyright is 'thin,' infringement will be established only by very close copying . . ."). Here, any copying is not "very close" because the Mahogany design does not feature the same selection and arrangement of public domain elements found in Takyu III.

Notwithstanding its admission of the public domain elements found in Takyu III, Odegard has argued that the Takyu III has no public domain elements. According to Odegard, the "Takyu" design identified as preexisting material in the Certificate of Registration for Takyu III is not the same Japanese kimono found in

11

the public domain, but rather the first design created by Stephanie Odegard based upon that Japanese kimono. To the extent that the public domain elements found in the Japanese kimono served as a basis for the design of Takyu, and to the extent that Takyu was a predecessor design to Takyu III, the vines found in Takyu III are still public domain elements that should be discounted in any infringement and analysis.

In granting summary judgment on non-infringement for the defendant, the court in <u>Maharishi Hardy Blechman v. Abercrombie & Fitch Company</u>, 292 F. Supp. 2d 535, 554 (S.D.N.Y. 2003), stated that the "noted differences are merely illustrative of a factual finding which is difficult to explain."

<u>Knitwaves, Inc. v. Lollytogs Ltd., Inc.</u>, 71 F.3d 996 (2d Cir. 1995), is relied upon by Odegard. Unlike in the case at bar, the copyrighted sweaters in <u>Knitwaves</u> were original creations in their entireties. <u>Id.</u> at 1004 n.3. Furthermore, the defendant Lollytogs also had chosen to use the same two fall symbols, leaves and squirrels, used by the plaintiff Knitwaves. <u>Id.</u> at 1004. Consequently, according to the court, "an observer viewing the sweaters side by side cannot help but perceive them as coming from one creative source." <u>Id.</u>

Here, no reasonably discerning consumer (<u>i.e.</u>, one who would spend thousands of dollars on a carpet) would expect the two

designs to share a common source of origin.  Odegard's Takyu III looks like the expensive hand-made carpet that it is and Safavieh's computer-generated Mahogany rug is not substantially similar.

Indeed, it is the differences in the individual details that make the overall designs decidedly different in look and feel. No reasonably discerning observer would find that the Mahogany design has a "floraseque" appearance like the classic design in the Japanese-inspired Takyu III.  The same consumers would not be interested in comparing or buying both designs for the same purpose and the Mahogany rug would not be viewed as a viable commercial substitute for the Takyu III carpet.

Odegard's reliance upon Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127 (2d Cir. 2003) is misplaced.  In Tufenkian, the Second Circuit noted that it was "one of those relatively unusual cases" where the infringing work copies the "particular" or "same" selections made in the copyrighted work. Id. at 136.  The selections identified by Odegard are simply not the same as those contained in the Safavieh design.

The border in Mahogany is not the same as the border in Takyu III.  The colored blocks in Takyu III abut each other while the differently colored blocks in Mahogany are separated by thick, jagged lines.  The vines randomly extend into the large open field at the middle of the Takyu III design, thus emphasizing the floral

appearance of the Takyu III design. The Mahogany rug has more blocks, unevenly arranged, than the 14 distinct colored blocks found in the border of the Takyu III carpet. The selections made by Odegard and allegedly copied by Safavieh are far different from those made in <u>Tufenkian</u>.

The Mahogany rug not only lacks the same selection and arrangement of design features found in the Takyu III carpet, but it also lacks the same designs. The lines in Mahogany are not similar to the vines or leaves found in Takyu III. Safavieh has selected, modified, coordinated, colored and arranged different non-copyrightable elements in different ways than Odegard. The differences between the individual design elements establishes that the designs are not substantially similar to the "more discerning ordinary observer."

## Conclusion

For the reasons set forth above, the motion of Safavieh for summary judgment is granted and the cause of action for infringement is dismissed.

It is so ordered.

**New York, NY**
**November       , 2005**

ROBERT W. SWEET
U.S.D.J.